IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD PITTS,           : | |
| :                        | |
| Plaintiff,           : | |
| :                        | Case No. 06-564 |
| v.                         : | JUDGE ALGENON L. MARBLEY |
| :                        | Magistrate Judge Mark L. Abel |
| THE PRUDENTIAL INSURANCE  : | |
| COMPANY OF AMERICA,        : | |
| :                        | |
| Defendant.           : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on Plaintiff Ronald Pitts' ("Pitts") motion for judgment on the administrative record.  Pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Pitts claims entitlement to long term disability ("LTD") benefits from the Long Term Disability Plan ("the Plan") established by his employer, Amylin Pharmaceutical, Inc. ("Amylin"), and insured by Defendant The Prudential Insurance Company of America ("Prudential").  Pitts asks this Court for a lump sum reimbursement for benefits not paid, interest, attorney's fees, and costs.  Prudential cross-motioned for judgment on the administrative record, and counter-claimed for restitution .  For the reasons set forth below, Plaintiff's motion for judgment on the administrative record is hereby **GRANTED**.  Defendant's cross-motion for judgment on the administrative record is **DENIED**, however, Defendant's counterclaim for restitution is hereby **GRANTED**.

### II.  BACKGROUND

### A. Facts

Pitts began working for Amylin Pharmaceuticals, Inc., as a Senior Territory Manager in December, 2002.  He left work on August 11, 2003, and subsequently applied for short term and long term disability benefits.  On November 7, 2003, Prudential approved Pitts' application for long term disability benefits, citing demonstrated vegetative symptoms of depression during his medical consultations, as well as his dreams of death.  In August, 2004, Pitts was awarded Social Security Disability ("SSD") benefits pre-dated to March, 2004.  On December 14, 2004, Prudential terminated his LTD benefits after determining that his impairment was no longer supported by medical evidence.

### 1. The Plan

While employed at Amylin, Pitts was covered by the policy plan governing this litigation.  The Plan was underwritten by Prudential and provided benefits equal to sixty-six and two-thirds percent of monthly earnings for a participant who became disabled as defined by the Plan.  In relevant part, the Plan defines "disabled" as follows:

- You are unable to perform the *material and substantial duties* of your *regular occupation* due to *sickness* or *injury*;
- you are under the regular care of a doctor.

The Plan defines "sickness" as "any disorder of body or mind."  The Plan also places the burden of proof of continued disability on the participant, requiring the participant to demonstrate the following:

- That you are under the *regular care of a doctor*.
- Appropriate documentation of the disabling disorder.
- The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful employment.

The Plan further limits the pay period for a disability based on self-reported symptoms or mental illnesses to twenty-four months during a participant's lifetime. The Plan defines mental illness as follows:

> Mental illness means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depression or bipolar illness, anxiety . . . These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotrophic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

### 2. The Medical Records

Dr. James Lipscomb is Pitts' primary care physician. Dr. Lipscomb signed the Prudential Group Disability Insurance Attending Physician's Statement for Pitts on August 20, 2003. He listed depression, mood swings, and insomnia as the obstacles preventing Pitts' return to work. He prescribed Zoloft and Paxil to treat Pitts' symptoms. He also referred Pitts to a psychotherapist, Dr. Earl Greer.

In March, 2004, Prudential hired Josephine Malysz, a nurse with a specialization in psychiatry, to conduct a clinical review of Dr. Lipscomb's and Dr. Greer's file notes on Pitts. Nurse Malysz noted that Pitts had not been referred to a psychiatrist for treatment. It was her opinion that because Pitts had gone months without significant signs of improvement, referring Pitts to a psychiatrist for medication management would be appropriate treatment for his disabling depression. In May, 2004, Prudential informed Pitts that he had until June, 2004, to begin treatment with a licensed psychiatrist or provide documentation from his treating physicians explaining why this was not necessary. Pitts informed Prudential that a psychiatrist would not be covered by his insurance, and Prudential therefore excused him of the June deadline.

In July, 2004, Prudential hired another nurse, Judy Montgomery, to conduct additional clinical review of Pitts' medical records, and to discuss Pitts' condition with Dr. Greer. Based on her review, Nurse Montgomery concluded that Pitts' functional capacity remained impacted to the point of preventing him from returning to work. During a follow-up review in November, 2004, however, Nurse Montgomery noted that Pitts had missed numerous appointments with Dr. Greer and was unclear about whether Pitts continued to lack the capacity to return to work. She recommended a full file review by psychiatrist Dr. Stephen N. Gerson.

In November, 2004, Dr. Gerson reviewed Pitts' medical file, and conferred with Dr. Greer concerning the status of Pitts' health. In his summary report to Prudential, Dr. Gerson concluded: (1) that Pitts could have gone back to work part-time a couple of months earlier, and that he could go back to work immediately, beginning with a brief part-time work hardening period; and (2) that Pitts had the functional capacity to return to his prior occupation.

### 3. Prudential's Review of Pitts' Claim

Based on Dr. Gerson's review, Prudential terminated Pitts' benefits on December 14, 2004. Prudential listed a number of explanations for its decision, but ultimately relied on Dr. Gerson's conclusions that the medical records suggested Pitts had not been substantially impaired for three to four months, and that Pitts had the capacity to return to work on a part-time basis.

On December 26, 2004, Pitts appealed Prudential's determination, detailing the symptoms of his disability and noting a severe panic attack that he suffered after learning that his benefits had been terminated. On January 8, 2004, Dr. Greer sent a letter to Prudential on behalf of Pitts confirming the severity of the panic attack, and concluding that Pitts was not "capable of

returning to any full or part-time employment due to his emotional state." A few days later, Dr. Lipscomb also sent a letter to Prudential on behalf of Pitts with his conclusion that Pitts was "totally disabled and [could] not perform his job essential duties." Prudential once again referred Pitts' medical file to Dr. Gerson for a review of potential mental disability. Dr. Gerson spoke with Dr. Greer on January 19, 2004, and subsequently concluded that his earlier opinion of Pitts' condition remained unchanged. With respect to Pitts' anxiety attack, Dr. Gerson stated that "one anxiety attack doesn't preclude or define a person as impaired from continuing to work." Prudential also consulted with Dr. Jill Fallon, a specialist in occupational medicine, and she concluded that there was no medical evidence that Pitts suffered an impairing physical condition. Based on the opinions of Dr. Gerson and Dr. Fallon, Prudential upheld its determination to terminate Pitts' benefits on February 24, 2005.

## B.  Procedural History

On July 6, 2006, Pitts filed this complaint against Amylin Pharmaceutical, Inc., and The Prudential Insurance Company of America.[1] Prudential counterclaims for restitution against Pitts. Now each party brings a motion for judgment on the administrative record. All responsive pleadings have been filed and these motions are ripe for resolution.

## III.  STANDARD OF REVIEW

District courts review a plan administrator's denial of ERISA benefits *de novo*, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or

---

[1] On June 11, 2007, Amylin was dismissed as a defendant by a joint motion of the parties.

to construe the terms of the plan.[2] *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When such discretion exists, courts review a plan administrator's decision to terminate benefits using the highly deferential arbitrary and capricious standard of review. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). "This standard 'is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.' " *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Workers Dist. Unions 445 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)). This deferential standard, however, is not a simple formality: "the arbitrary and capricious standard . . . does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). Instead, a plan administrator's decision will only be "upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991). This requires the reviewing court to weigh "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2006).

One further element of the arbitrary and capricious standard of review, relevant to this action in particular, is that an actual conflict of interest exists where the entity adjudicating the claim is also the entity responsible for paying the benefits. *Killian v. Healthsources Provident*

---

[2] It is undisputed that the plan in question gives the administrator discretionary power over interpretation.

*Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). This conflict does not, however, alter the standard of review. Instead, it becomes another factor in analyzing whether the plan administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber*, 489 U.S. at 115.

## IV. ANALYSIS

### A. Termination of Benefits

#### 1. Objective Evidence

Pitts argues that because the Plan provides for coverage of subjective disorders, Prudential did not have the right to deny coverage based upon a lack of objective medical evidence, and that doing so was arbitrary and capricious. The Plan expressly allows for self-reported symptoms of disability: "[d]isabilities . . . primarily based on self-reported symptoms have a limited pay period . . . The limited pay period for self-reported symptoms and mental illness combined is twenty-four months during your lifetime." Pitts argues that the terms of the Plan were violated when Prudential terminated benefits based on Dr. Gerson's opinion that there was "no data to validate severe disorders of attention, concentration, memory or psychomotor retardation" and "no evidence of incapacitating cognitive or psychological issues for the last few months." Pitts claims that his letters to Prudential detailing symptoms of depression, anger, and anxiety represent self-reported symptoms covered by the Plan. Pitts cites this Court's decision in *Pelchat v. Unum Life Ins. Co. of Am.*, 2003 U.S. Dist. LEXIS 8095, at *30-33 (S.D. Ohio 2003)**,** for the proposition that requiring objective medical evidence under a plan that allows for self-reported symptoms adds a requirement to the definition of disabled, which is tantamount to an impermissible re-write of the plan. Pitts argues that Prudential's basis for termination constitutes

-7-

a similarly impermissible re-write of the Plan.

Prudential counters that it did not terminate Pitts' benefits for lack of objective evidence concerning the types of disabilities reported, but rather because no evidence was presented to show the disabling severity of his condition. Prudential relies on *Wilson v. Metlife, Inc.*, 2005 U.S. Dist. LEXIS 7222, at *28 (E.D. Mich. 2005), to argue that a plan administrator may demand a "psychiatric explanation tying the conclusion that the claimant is disabled to some medical finding that supports it, or an explanation as to how intuitively benign findings actually are indicative of a disabling condition." (Citing *Yeager,* 88 F.3d at 381 (holding that "in the absence of any definite anatomic explanations of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious.")). Prudential argues that Pitts did not provide such evidence, as was required by the Plan.

The terms of the Plan expressly required Pitts to provide documentation of his disabling disorders. The record shows that Prudential was provided with letters from Pitts' treating physicians explaining that Pitts' condition prevented him from returning to work. Dr. Lipscomb wrote in his letter that "Mr. Pitts is a patient of mine with numerous organic medical & psychological medical conditions that has rendered him totally incapacitated and non-functioning." Dr. Greer's letter stated, "[i]t is my recommendation that Mr. Pitts is not currently capable of returning to any full or part-time employment due to his emotional state. As Mr. Pitts' Psychotherapist, his anxiety and depression are work prohibitive . . . ." But, these opinions only assert the existence of disabling conditions; they do not, however, explain why the conditions prevented Pitts from returning to work. It was this type of evidence that was rejected in *Wilson* as a superficial attempt to explain the claimant's disorders. The court in *Wilson* held

-8-

that the evidence failed to specify why the claimant's condition prevented him from performing the specific tasks required by her occupation. *Wilson*, 2005 U.S. Dist. LEXIS 7222, at *28.

Pitts avers that there is no objective means to test for his symptoms. This argument is partially supported by this Court's decision in *Pelchat*. In *Pelchat*, the Court held that "[t]he problem with [defendant's] apparent requirement of 'objective medical evidence' is that [defendant] has identified no more 'objective' evidence that plaintiff could have submitted, in addition to her doctor's observations, to support her claim of disability." *Pelchat,* 2003 U.S. Dist. LEXIS 8095, at *32. Here, the closest Prudential comes to identifying objective evidence Pitts could have submitted to further support his claim is suggesting that Pitts should have sought an escalating treatment plan or referrals to specialists when it became clear that he was not close to returning to work, and that documentation of this effort would constitute objective evidence. This argument, however, places the burden on the claimant to go beyond what his treating physicians recommend, and presumes that the treating physicians were not making appropriate medical decisions. This Court does not find such examples to be realistic suggestions of what Pitts could have done to fulfill his documentation burdens under the Plan.

The court in *Pelchat*, however, also found that the defendant's decision to terminate benefits could have been reasonable if it had presented reliable evidence to rebut plaintiff's treating physician's conclusions, as opposed to just the results of a physical exam that indicated plaintiff could return to "light" sedentary work full-time. *Id.* at *34. Here, Prudential provided and relied upon the medical review of Dr. Gerson. While Dr. Gerson reached the opposite conclusion of Pitts' two treating physicians, the Court does not find that Prudential's reliance on Dr. Gerson's opinion constitutes an arbitrary and capricious decision per se. *See Black &*

*Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that plan administrator's are not required to accord special weight to treating physicians).

### 2.  Pitts' Ability to Materially and Substantially Perform

Pitts argues that Prudential's decision to terminate LTD benefits based upon Dr. Gerson's opinion that Pitts could return to work part-time was arbitrary and capricious.  The Plan defines disabled as being materially and substantially unable to perform the duties of your occupation, and Pitts argues that being able to work part-time does not constitute material or substantial ability to perform.  Pitts cites *McDonald* for the proposition that qualified, equivocal language by a reviewing physician is insufficient to support a determination that one is not disabled.  *See McDonald*, 347 F.3d at 170-71.

Prudential asserts that Dr. Gerson concluded Pitts was not substantially impaired and could return to work. Prudential notes that Dr. Gerson relied on medical evaluations and statements by Dr. Greer indicating that Pitts could return to work part-time, and that Dr. Greer's change of opinion after Prudential's initial decision to terminate benefits lacked credibility.  Citing case law from other circuits, Prudential argues that courts regularly prohibit plan administrators from accepting treating physicians' opinions where conclusory remarks or prior inconsistent opinions are left unexplained.  *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir. 2004) (holding that accepting a treating physician's conclusory remarks without any explanation can be characterized as arbitrary); *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569 (7th Cir. 2006) (holding that unreasoned inconsistencies in treating physicians' opinions demonstrate advocacy as opposed to rendering objective opinions).

Addressing the issue of Dr. Greer's credibility first, this Court finds nothing in the record

to suggest that he is biased or lacked cause for changing his initial position that Pitts could possibly return to work part-time. Prudential argues that Dr. Greer presented no justification for his change of opinion, and thus demonstrated bias by changing his opinion only after the termination of benefits. This argument is not supported by the record. Dr. Greer's opinion of Pitts' ability to return to work changed as a result of Pitts' severe anxiety attack, which he explicitly states in his letter to Prudential dated January 8, 2004. Dr. Lipscomb corroborated Dr. Greer's opinion by sending a letter of his own to Prudential after the anxiety attack, stating that Pitts was "totally incapacitated and non-functioning." Combining the fact that Pitts sustained a severe anxiety attack with the corroborating opinion of Dr. Lipscomb, this Court rejects Prudential's assertion that the change in Dr. Greer's opinion can only be explained by bias.

With respect to Prudential's summary of Dr. Gerson's conclusions, the Court finds the assertion that Dr. Gerson said Pitts could return to work misleading. While Prudential is correct in stating that Dr. Gerson concluded that Pitts was not wholly or substantially impaired from his regular occupation, he did not say that Pitts could immediately return to performing the material and substantial duties of his occupation. Instead, he stated that Pitts would need a short period of "part time work hardening" before he could fully return. In its termination letter to Pitts, Prudential explained that based on Dr. Gerson's medical assessment, Pitts no longer met the Plan's definition of disabled. The question before this Court therefore becomes whether being able to engage in "part time work hardening" constitutes material and substantial ability to perform as required by the Plan?

The reasoning in *McDonald* is particularly instructive here. The court in *McDonald* held that the possibility of returning to work on a limited trial period, in light of "overwhelming

-11-

evidence to the contrary," is an insufficient basis upon which to terminate benefits. *McDonald*, 347 F.3d at 170-71. The record here establishes that Pitts' treating psychologist, Dr. Greer, initially concluded that he could return to work part-time. But, the record also contains subsequent letters from Dr. Greer and Dr. Lipscomb, sent during the appeals process, that unequivocally express their medical opinions that Pitts had become totally incapacitated and incapable of returning to work. Furthermore, Dr. Gerson's opinion did not explain what he meant by part-time work, and it is unclear to the Court what someone in a senior management position could do when limited to working part-time as a result of mental illness. *See id.* at 172 (discounting the value of a medical opinion that did not specify what type of work the patient could perform when returning to work on a limited basis). The Court therefore concludes that the possibility of Pitts being able to return to work part-time, in light of the directly contradictory medical opinions of his only treating physicians,[3] was an insufficient basis upon which to terminate his benefits.

### 4. Failure to Conduct an Independent Medical Examination

Pitts argues that Prudential's failure to conduct an independent medical examination

---

[3] Prudential is correct to point out that the "Treating Physician Rule" is inapplicable in ERISA cases, however, Prudential is incorrect insofar as it asserts that the opinions of treating physicians may not be given special weight. The Supreme Court has simply stated that plan administrator's are not required to accord special weight to treating physicians. *Nord*, 538 U.S. at 825. This is a clarification of the arbitrary and capricious standard from a procedural standpoint. It is not, however, a mandate that special weight may never be given to treating physicians based upon the substantive judgments of a reviewing court. Of particular relevance is the fact that the treating physician in *Nord* was given deference over another physician who had personally evaluated the plaintiff, whereas here, this Court is distinguishing the value of two treating physicians' medical opinions versus the opinion of a physician who never met with the Plaintiff and relied solely upon statements from the treating physicians. *See Nord*, 538 U.S. at 827.

("IME")[4] is additional evidence that the denial of his disability claim was arbitrary and capricious.  Pitts relies on the *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006), where the Sixth Circuit found that the plan administrator's reliance on a medical opinion that made credibility findings concerning the claimant's self-reported symptoms, without the benefit of physically examining the claimant, supported the finding that the termination of benefits was arbitrary.  In the present case, Pitts argues that Prudential questioned his credibility by stating in its termination letter that there was no evidence to validate the symptoms of his self-reported claim.

Prudential counters that its disagreement with Pitts' self-reported symptoms does not mean that it called his credibility in to issue.  Prudential asserts a different interpretation of *Smith*, arguing that the case only cautions insurers not to rely on a file review when the reviewing physician, not the insurer as is alleged here, makes credibility determinations.  Prudential further counters Pitts' claim by arguing that an IME would not be useful because it would not be able to substantiate Pitts' self-reported symptoms, or at best, it would have only offered a credibility assessment of those self-reported symptoms.

The Court agrees with Pitts.  First, Prudential cannot have it both ways by arguing that it would be impossible for an IME to produce objective evidence of the severity of Pitts' self-reported symptoms, but also cite the lack of "data" validating Pitts' claims as a justification for the termination of benefits.  If Prudential believes it would be impossible for a neutral physician to find validating data, then it would be unfair to require Pitts to demonstrate such data.  Second,

---

[4] This is an in-person examination of a patient by a physician who was not involved with the patient's previous care.

contrary to Prudential's assertions, the facts in the present case are indeed analogous to those in *Smith*. In his appeal letter sent to Prudential, Pitts stated, "[m]y nerve problems are beginning to get worse . . . Nervousness, Vomiting, Fatigue, Headache, Nausea, Forgetfulness and I forget to pay my bill's and Dr,s appointments . . . ." Prudential ignored these assertions during the appeals process and upheld the termination based on Dr. Gerson's unchanged opinion that there was no data to validate severe disorders of attention, concentration, memory, or psychomotor retardation, and no evidence of incapacitating cognitive or psychological issues. By justifying the termination of benefits with the argument that there was no evidence validating the claims asserted by Pitts, Prudential necessarily concluded that it did not believe Pitts' claims were credible. The court in *Smith* found that because the reviewing physician made credibility determinations concerning the claimant's self-reported symptoms, and the policy permitted the plan administrator to require an IME, the decision not to perform an IME suggested arbitrariness. *Smith,* 450 F.3d at 263. Likewise here, Dr. Gerson made a credibility determination that was relied upon by Prudential. The Plan reserved the right to require an IME of Pitts; and yet Prudential chose not to obtain an IME. Therefore, this Court finds that Prudential's decision not to perform an IME, in light of its citation to a lack of data verifying the severity of any potential disabilities, supports the finding that the termination of benefits was arbitrary and capricious.

### 5. Full and Fair Hearing

Pitts also argues that Prudential failed to provide him with a full and fair hearing because Pitts' medical records were reviewed, initially and on appeal, by Dr. Gerson in violation of Department of Labor regulation 29 C.F.R. § 2560.503-1(h)(4). Section 2560.503-1(h)(4) states that a plan providing disability benefits will not be deemed to provide a claimant with a

reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with § 2560.503-1(h)(3)(v), among others. Section (h)(3)(v) states:

> [T]he health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of appeal, nor the subordinate of any such individual.

Pitts argues that Prudential's reliance on Dr. Gerson for review of his mental illnesses, both initially and on appeal, violates section 2560.503-1(h)(3)(v).

Prudential counters that it complied with § 2560.503-1(h)(3)(v) because it consulted with a number of health care professionals before it terminated Pitts' benefits, and with a number of health care professionals while addressing Pitts' appeal. Specifically, Prudential lists the four nurses who reviewed Pitts' medical file before the termination, as well as Dr. Fallon's review during the appeals process, as proof that no one individual was responsible for the adverse benefit determination before the termination and during the appeal. Prudential hedges its argument by asserting that even if it was not in exact compliance with § 2560.503-1(h)(3)(v), it substantially complied. Relying on *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444 (6th Cir. 2003), Prudential argues that substantial compliance is a regularly accepted test in the Sixth Circuit to measure an insurer's actions against the mandates of regulations.

The Court rejects each of Prudential's arguments. Both in its internal memorandums and its termination letter to Pitts, Prudential expressly states that it ultimately relied on Dr. Gerson's opinion in reaching its decision to terminate benefits. On appeal, Dr. Gerson was the only health care professional consulted to evaluate Pitts' psychological symptoms—Dr. Fallon clearly noted

that she was only evaluating physical symptoms. Prudential cannot escape the documentation in the record showing that it reached each of its decisions relying upon the opinion of Dr. Gerson. Furthermore, the Sixth Circuit has not applied a substantial compliance test to § 2560.503-1(h)(3)(v). The cases Prudential cites only state that substantial compliance will be used to measure whether an insurer has met the notice requirements imposed upon insurers under ERISA. *See Marks,* 342 F.3d at 460; *Kent v. United of Omaha Life Ins., Co.*, 96 F.3d 803, 808 (6th Cir. 1996). The Sixth Circuit's rationale for using the substantial compliance test when dealing with improper notice is to prevent unjust reversals on a claim decision due to a minor procedural defect. *See Kent*, 96 F.3d at 808. At issue here, however, is the most fundamental of procedural defects: an insurer, with the conflict of interest of being both the adjudicator and payer of benefits, basing its decision on the opinion of its hired health care professional during the initial review and on appeal. Accordingly, the Court finds that Prudential failed to provide Pitts with a full and fair review of his disability claim, in violation of 29 C.F.R. § 2560.503-1(h)(4).

### 6. Remedy

The question remains as to what remedy is in order. The Court "may either award benefits to the claimant or remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006). District courts "must have considerable discretion to craft a remedy after finding a mistake in the denial of benefits." *Id.* at 622 (internal quotation marks and citation omitted). Generally speaking, when a plan administrator fails to offer a reasoned decision for its denial of benefits, the case should be remanded so that the administrator may consider the claimant's file anew giving it "a full and fair review." *Id.* (internal quotation marks

and citation omitted).  A retroactive award of benefits is proper, however, if the medical evidence shows that the claimant "was denied benefits to which [s]he was clearly entitled." *Id.* (internal quotation marks and citation omitted).  In *Cooper*, 486 F.3d at 172, the Sixth Circuit concluded that the claimant had supported her application with objective medical evidence and that plan administrators are not entitled to "two bites at the proverbial apple," except "where the adequacy of claimant's proof is reasonably debatable."  Finding that "not [to be] the case," the Sixth Circuit declined to remand the case to the plan administrator and instead awarded retroactive benefits.  *Id.* at 172-73.

The Court finds that the evidence establishes that Pitts is entitled to disability benefits.  The record demonstrates that at the time Pitts stopped receiving benefits, both of his treating physicians believed that he was disabled and would be unable to return to work.  Furthermore, Prudential relied on Dr. Gerson's opinion that Pitts could only return to work if given a period of part-time work hardening.  As already discussed, the Court concludes that this does not constitute material and substantial ability to perform the duties of his occupation.  Thus, a remand to Prudential so that it could review Pitts' claim for what would be the third time would serve no useful purpose.

Pitts shall have twenty-one days from the date of this Opinion and Order to file an application setting forth the total amount of disability benefits to which he is entitled.  In the same application, Pitts also may request interest on the award of disability benefits and attorneys' fees.  *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002) (explaining that a district court has discretion to order the payment of pre-judgment interest on a disability benefits award); 29 U.S.C. § 1132(g)(1) (stating that "[i]n any action under this title . . . by a

participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). Prudential shall have twenty-one days from the date of service of Pitts' application to respond. Pitts shall file any reply within eleven days.

### B. Prudential's Counterclaim for Reimbursement

#### 1. Applicable Legal Standards

Prudential seeks summary judgment on its counterclaim for restitution. Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

#### 2. Facts

From November 19, 2003, through December 31, 2004, Prudential paid Pitts the full amount of his gross LTD benefits under the Plan. In August of 2004 Pitts was awarded retroactive SSD benefits, going back to March 1, 2004, in the amount of $1,808 per month. The Plan and the reimbursement agreement signed by Pitts obligate him to reimburse Prudential for any overpayments it made as a result of Pitts' receipt of other deductible sources of income. The full amount of Pitts' SSD benefits should have been deducted from his LTD benefits provided by Prudential. Prudential now moves for summary judgment on its counterclaim for restitution.

### 3. Analysis

A plan fiduciary, such as Prudential, is authorized under ERISA to bring a claim for appropriate equitable relief to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3). The Supreme Court has held that for restitution of insurer overpayment to be equitable, the restitution must involve the imposition of a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). This requires the plan to identify a particular fund—distinct from the defendant's general assets—and the portion of that fund to which the defendant is entitled. *See Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869, 1875 (2006).

The arguments presented by each party in the present case are straightforward. Pitts claims that Prudential is asking this Court to create an equitable lien over Pitts' award of SSD benefits. Pitts argues that this would violate the Social Security Act, and is therefore impermissible. Prudential responds by arguing that it is asking for an equitable lien on the overpaid amount of LTD benefits received by Pitts, not his award of SSD benefits.

Sixth Circuit case law clearly supports Prudential's argument. After all of the relevant motions were filed in the present case, the Sixth Circuit decided *Gilchrest v. Unum Life Ins. Co. of Am.*, 2007 U.S. App. LEXIS 24633, at *21 (6th Cir. Oct. 2007). In *Gilchrest* the court held that "overpayments due to the receipt of Social Security benefits" represent a specifically identifiable fund, in compliance with the requirements of *Sereboff*. *See also Fregeau v. Life Ins. Co. of North Am.*, 2007 U.S. Dist. LEXIS 38617 (N. D. Ill. May 2007). The plan at issue in *Gilchrest*, like the plan at issue here, contained a provision asserting the right to recover from the overpayment of benefits, including overpayment resulting from the receipt of SSD benefits.

*Gilchrest*, 2007 U.S. App. LEXIS 24633, at *21.  Finding no issues of material fact, this Court rules that Prudential is entitled to a restitution payment in the amount of $18,080 as a matter of law.  Summary judgment is **GRANTED**.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is hereby **GRANTED**.  Defendant's cross-motion for judgment on the administrative record is **DENIED**, however, Defendant's counterclaim for restitution is **GRANTED**.  The Court therefore enters **JUDGMENT** in favor of Plaintiff as to Plaintiff's claim to recover benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and in favor of Defendant as to Defendant's counterclaim for restitution under ERISA, 29 U.S.C. § 1132(a)(3).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: February 19, 2008**